STARK et al., Appellants, v. MARTIN et al.

**Division One, May 29, 1907.**

1. **APPELLATE JURISDICTION:** *Motion to Affirm.* If the appellate court has no jurisdiction of the appeal, it will not pass on the merits of the respondent's motion to affirm the judgment on the ground that the appellant's abstract does not comply with the rules of the court.

2. ———: **Title to Real Estate: Priority of Liens.** Where the most that can be said of appellant's petition is that it seeks to have the instrument sued upon declared to be a first lien on land and to have that lien foreclosed, and the judgment if one had been entered for him might have been satisfied by a payment of money, title to real estate is not so involved as to give the Supreme Court jurisdiction of the appeal.

Appeal from Schuyler Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

204 Sup—28

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*S. W. Mills, John D. Smoot* and *Edward E. Campbell* for appellants.

*C. C. Fogle* and *Higbee & Mills* for respondents.

GRAVES, J.—This is an action to have declared and enforced a conceived lien, upon forty acres of land in Schuyler county, and as a basis therefor, the following written instrument is pleaded, viz:

"This Indenture made and entered into this first day of June, A. D. 1894, by and between Jacob Sommer Jr. (P. O. Lancaster, Mo. 5 miles N. E. Lancaster, Mo.) of the county of Schuyler and State of Missouri, party of the first part, and Stark Bros. Nurseries & Orchards Co. of Louisiana, county of Pike and State of Missouri, parties of the second part;

"Witnesseth, that the said party of the first part in consideration of the second parties selling and shipping to him in the fall of 1894 or spring of 1895, to Lancaster, Mo., railroad freight charges prepaid, one hundred dollars worth of fruit trees and binds himself, his heirs and assigns, to plant said trees on his farm containing sixty acres, situated, in Schuyler county, State of Missouri, and more particularily described as follows: N. E., N. E., sec. (29) twenty-nine; also west half N. W., N. W., sec. twenty-eight (28), sections 28 and 29, township 67, range 14, boundaries north, John Casteel, east, Wm. Enlow, south, J. B. Nichols, west, James Jones, and to pay to the order of said second parties, their heirs or assigns, as evidenced by his ten promissory notes to be executed by said first party to second parties when the aforesaid trees were shipped. One hundred dollars due and payable as follows: all deferred interest and payments and interest hereinafter particularly specified to date from the first day

of December, 1894, one-tenth in one (1), one-tenth in two (2) years, one-tenth in three (3) years, one-tenth in four (4) years, one-tenth in five (5) years, one-tenth in six (6) years, one-tenth in seven (7) years, one-tenth in eight (8) years, one-tenth in nine (9) years, one-tenth in ten (10) years, with interest at the rate of six (6) per cent per annum, and if the interest be not paid annually to become as principal and bear the same rate of interest; to the payment of which sums as the same shall become due the party of the first part binds himself, his heirs, assigns and grantees of and to the aforesaid described lands, the right being reserved to the said party of the first part to pay the full amount remaining unpaid and not yet due, together with accrued interest at any time he may elect within the period of nine (9) years next after date last above written. And the said first party for the purpose of obtaining this credit states that the above real estate is free and clear of encumbrances and that he claims the same with a perfect title, except mortgage for seven hundred dollars.

"In Witness Whereof, we have hereunto set our hands this the day and year first above written.
"Witnessed by J. CHAMBERS.    JACOB SOMMER (Seal.)
                             STARK BROS.   (Seal.)"

This written instrument was duly acknowledged by Jacob Sommer, Jr., on June 2, 1894, and filed for record in the recorder's office of Schuyler county, June 9, 1894.

The prayer of the petition is as follows: .

"Wherefore, plaintiffs pray that they have special judgment for the sum of one hundred and sixty dollars and interest from the date of the filing of this petition and that said judgment be made a first lien on the land last described, to-wit, the east half of the northeast quarter of the northeast quarter of section 29, and

the west half of the northwest quarter of the northwest quarter, of section 28, all in township 67, range 14, in Schuyler county, Missouri, that all equities of redemption be foreclosed and that said lien be enforced and that said real estate or so much thereof as may be necessary to satisfy said judgment together with costs of suit be sold and that a special *scire facias* be issued thereupon and for costs and for general relief.''

The petition charges the delivery of the trees as per the written instrument aforesaid, and the planting of the same upon the land in dispute, and a failure to pay the contract price. The petition further charges that at the date of the written instrument aforesaid the land was free and clear of incumbrance, except a mortgage of five hundred dollars to H. A. Brinkeman, and a second mortgage to Allen Updyke for two hundred dollars; that Sommer paid both of these mortgages in full October 16, 1895, and the liens thereby created were satisfied upon the margin of the record of said mortgages; that Sommer died November 1, 1895, but prior thereto, and on September 2, 1895, he and his wife executed a deed of trust covering forty acres of the land in the contract mentioned to the Phoenix Mutual Life Insurance Company to secure a loan of three hundred and fifty dollars; that in 1897, this deed of trust was foreclosed and the said forty acres of land sold to Jacob Gardner for six hundred and fifty dollars; that Gardner afterward conveyed said land to W. N. Enlow and Louis I. Enlow, and that they, upon the day of their purchase, executed a deed of trust to the Hill-Dodge Banking Company for one thousand and seventy-five dollars and also a deed of trust to John C. Mills for $53.75; that the Enlows thereafter conveyed to Ed. Martin. Ed. Martin, John C. Mills and the Hill-Dodge Banking Company were made defendants.

Defendants Mills and Hill-Dodge Banking Company file their separate answer in these words:

"The said defendants, John C. Mills and The Hill-Dodge Banking Company, for their separate answer to plaintiff's petition, deny all allegations therein except as herein admitted and averred.

"Further answering, they aver that said Jacob Sommer, Jr., had no interest in the lands in said petition described on June 1, 1894, nor had he any interest therein until October 15, 1895, when he acquired the title thereto in fee; that in contemplation of purchasing said land and in order to raise the money to pay therefor said Sommer made a loan of the said Phoenix Mutual Life Insurance Company of three hundred and fifty dollars, on September 2, 1895, and to secure the payment of his note to said company, said Sommer on said day executed a deed of trust to said company, whereby he granted, bargained, sold and conveyed said forty acres of land described in said petition to said Phoenix Mutual Life Insurance Company, to-wit, the east half of the northeast quarter of northeast quarter of northeast quarter, section 29, and west half of northwest quarter of northwest quarter, of section 28, township 67, range 14, in Schuyler county, Missouri, with covenants of warranty, seizin and further assurance of title, with which three hundred and fifty dollars said Sommer paid the purchase price of said forty acres of land; that thereafter said deed of trust was duly foreclosed and said land duly conveyed under the power contained in said deed of trust to said Jacob Gardner on December 15, 1897, and said Gardner afterwards conveyed said land to said W. N. Enlow and Louis I. Enlow at the time stated; that said W. N. Enlow and Louis I. Enlow duly executed deeds of trust to these defendants respectively as stated in the petition to secure the payment of the sums stated, which were for loans made for

these defendants respectively in good faith, and which loans are wholly unpaid and said deeds of trust are still in full force and first liens on said lands; that said Enlows conveyed said lands to said Ed. Martin, who is now the owner thereof, subject to said deed of trust; that all of said conveyances were made in good faith, for valuable considerations and without notice of plaintiffs' pretended claim and lien.

"Having fully answered, defendants pray to be discharged with their costs."

Defendant, Ed. Martin, answers thus:

"Now comes the defendant, Ed. Martin, and for his answer to plaintiffs' petition in the above entitled cause denies each and every allegation therein contained.

"For further answer, defendant says that he is the owner in fee of forty acres of land described in plaintiffs' petition; that he bought the same in good faith and paid a valuable consideration for the same and had no notice whatever of plaintiffs' pretended mortgage at the time of his purchase or at any time prior thereto; that plaintiffs' pretended mortgage is no lien on the land that defendant purchased for the reason that at the time the said Jacob Sommer gave said mortgage he had no title to the land.

"Defendant having fully answered prays to be discharged with his costs."

Defendants have filed their motion to affirm the judgment for alleged failure upon part of plaintiffs, appellants, to comply with rules 11, 12 and 13 of this court. Plaintiffs thereafter filed application for leave to file additional abstract, which application was refused. The case thus stands upon defendants' motion to affirm judgment.

The foregoing statement of facts is gathered more from the transcript on file, than from the so-called abstract of record.

I. At the very threshold, we are confronted with the question of our jurisdiction. If the cause has been improperly brought by appeal, to this court, we have no right to proceed therewith, and should not pass upon the merits of defendants' motions to affirm. It appears that upon the trial, plaintiffs took a nonsuit, whether voluntary or involuntary it is not for us to say until after we have determined our right to hear this appeal. The appeal to this court was taken by plaintiffs.

Under these pleadings, have we jurisdiction of this appeal? The amount is insufficient to confer jurisdiction, and if we have acquired jurisdiction it is by reason of title to real estate being involved. Is title to real estate involved within the meaning of section 12 of article 6 of the Constitution? We think not. The most that can be said of this petition is, that it seeks to have the written instrument sued upon declared a first lien upon the land in dispute, and then a foreclosure of such lien. In other words, it asks the court to find the amount of a lien and enforce the same by special execution prior to other admitted liens pleaded. Neither by the petition nor by the answers is it sought to have even a mortgage or deed of trust cancelled. At most the trial court was called upon to determine the mere priority of liens. The title, by all parties, is admitted to be in Ed. Martin. If the court had entered judgment for plaintiff, the same might have been satisfied by a payment of the judgment. In such cases we have held that title to real estate is not involved in such manner as to give this court jurisdiction. [Bruner Granitoid Co. v. Klein, 170 Mo. 225; Bailey v. Winn, 101 Mo. l. c. 658; State ex rel. Haeussler v. Court of Appeals, 67 Mo. l. c. 200; Baier v. Berberich, 77 Mo. l. c. 416; Corrigan v. Morris, 97 Mo. 174; Price v. Blankenship, 144 Mo. l. c. 208; Vander-

grif v. Brock, 158 Mo. 681; Balz v. Nelson, 171 Mo. l. c. 689; Klingelhoefer v. Smith, 171 Mo. l. c. 463.]

In the early case of State ex rel. v. Court of Appeals, 67 Mo. l. c. 200, in an opinion by HOUGH, J., we said: "At the January term, 1876, at St. Louis, we decided that suits on special taxbills, and to foreclose mortgages, and to enforce mechanics' liens, were not suits involving title to real estate, and all such cases involving sums within the final jurisdiction of the Court of Appeals which were docketed in this court after the establishment of that court, were transferred to it."

Following this, in the case of Baier v. Berberich, 77 Mo. l. c. 416, which was a case wherein the judgment would directly affect the title to real estate, in distinguishing such case from cases of the class of the one at bar, we said: "The case contained in this record does not fall within the class of cases involving the enforcement of liens and taxbills and the foreclosure of mortgages, in which the sole object of the proceeding is to subject the admitted title of real estate to liens and demands, and to enforce them against it by process."

BLACK, J., in Bailey v. Winn, 101 Mo. l. c. 658, thus says: "This court has appellate jurisdiction 'in cases involving title to real estate.' It has been the constant ruling under this clause of the Constitution that cases having for their sole object the enforcement of taxbills and mechanics' liens, and the foreclosure of mortgages do not involve the title to real estate. [Baier v. Berberich, 77 Mo. 414; Syenite Granite Co. v. Bobb, 97 Mo. 46; Corrigan v. Morris, 97 Mo. 174.] It is not enough that the judgment, when carried into execution, will affect the title to the land. The title must be involved in the suit itself, and be a matter about which there is a contest."

Price v. Blankenship, supra, states the law in the following language: "It is now firmly settled that to

give this court jurisdiction under section 12 of article 6 of the Constitution, because the title to real estate is involved, it must appear that the title to real estate will, in some way, be directly affected by the judgment to be rendered in the case. It was not sufficient that the question of title may be incidentally, collaterally or necessarily inquired into to settle the issues. The judgment to be rendered must directly affect the title iteslf to the real estate. If the judgment rendered by the lower court could be satisfied by the payment of money without affecting the title to real estate, the case would not fall within our jurisdiction under this provision of the Constitution.''

Discussing our jurisdiction upon the question as to whether or not title to real estate is or is not involved, VALLIANT, J., in Klingelhoefer v. Smith, supra, speaks thus: ''There is no doubt but that in the first suit mentioned, wherein these petitioners sued their mother to have a resulting trust in the land declared in their favor, title to real estate was involved, but in the suit in which this appeal was taken to the Kansas City Court of Appeals there was no title to real estate involved. The gist of the petition in the case and of the decree was that those daughters had knowingly and approvingly allowed the title to be taken in their mother's name, and had thereby given her a credit on the faith of which the plaintiff had loaned the money which was the foundation of the judgment, and the prayer of the petition was that as to him the title should be deemed to be in the mother, and the land subjected to the payment of plaintiff's judgment. And that was the decree. The title as between mother and daughters was not sought to be disturbed, but because they had misled the plaintiff to his disadvantage by their behavior, the decree was that their land should be charged with the debt. The title to real estate was

not involved in the case, and the Kansas City Court of Appeals had jurisdiction.''

Beginning with State ex rel. v. Court of Appeals, supra, all the cases we have cited are approved in the very recent case of Payne v. Daviess County Savings Assn., 198 Mo. 617.

We therefore conclude that title to real estate is not involved in this case, and there being no other questions which would give this court jurisdiction we are without authority to further proceed with the case.

II.   Having reached the conclusion expressed in paragraph one, it would not be proper to give any expression, either upon the merits of the case, or the alleged insufficiency of the record.   The case should be transferred to the St. Louis Court of Appeals, and it is so ordered.   And to the end that the Court of Appeals may be entirely unhampered in its review of all questions in the case, we vacate our former judgment overruling the application to file additional abstract of record.   Having no jurisdiction, we desire to send the case to the Court of Appeals in just the condition in which it reached this court.

All concur.